FILED
United States Court of Appeals
Tenth Circuit

August 5, 2026

Christopher M. Wolpert
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

————————————————————

RICHARD THOMAS THIGPEN,

Plaintiff - Appellant,

v.

WESTLAKE SERVICES, LLC,

Defendant - Appellee.

No. 25-2081
(D.C. No. 1:24-CV-00214-KWR-SCY)
(D. N.M.)

————————————————————

**ORDER AND JUDGMENT**[*]

————————————————————

Before **BACHARACH**, **KELLY**, and **EID**, Circuit Judges.

————————————————————

Mr. Thigpen bought a truck and entered a contract to pay in installments, and the seller assigned the contract to Westlake Services, LLC. Mr. Thigpen stopped paying and sued Westlake for nondisclosure and

---

[*]    Oral argument would not help us decide the appeal, so we have decided the appeal based on the record and the briefing. *See* Fed. R. App. P. 34(a)(2)(C); 10th Cir. R. 34.1(G).

This order and judgment is not precedential except under the doctrines of law of the case, res judicata, and collateral estoppel. But the order and judgment may be cited for its persuasive value if otherwise appropriate. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

misconduct in collecting what he owed. The district court granted summary judgment to Westlake, and Mr. Thigpen appeals. We affirm.

### 1.     Consideration of Westlake's Reply Brief

On appeal, Mr. Thigpen argues that the district court erred by considering arguments presented for the first time in Westlake's reply brief. In district court, Mr. Thigpen requested leave to file a surreply brief "to address and rebut [Westlake's] new arguments." R. at 311. The district court allowed Mr. Thigpen to file a surreply, and he did so.

Even though Mr. Thigpen got what he requested, he argues that the district court shouldn't have considered the arguments newly asserted in Westlake's reply brief. We reject this argument because the court didn't err: Mr. Thigpen asked for a chance to file a surreply, he received permission and filed the surreply, and the court considered the surreply just as he had requested.[1]

### 2.     Grant of Summary Judgment

Nor did the court err in granting summary judgment to Westlake. Mr. Thigpen asserted claims involving the Truth in Lending Act, the Fair Debt Collection Practices Act, the Telephone Consumer Protection Act,

---

[1]     Mr. Thigpen quotes the district court as saying: "Because Plaintiff's sur-reply contains newly alleged evidence from his response, the Court will grant the sur-reply and consider the additional materials." Appellant's Opening Br. at 16. This language does not appear in the district court's order.

breach of contract, unjust enrichment, and violation of the New Mexico Unfair Practices Act.

### a.    Standard of Review

We conduct de novo review of the district court's grant of summary judgment. *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015). In that review, we draw all reasonable inferences in favor of the nonmoving party (Mr. Thigpen) to determine whether Westlake was entitled to judgment as a matter of law. *Id.*; Fed. R. Civ. P. 56(a).

### b.    Claims under the Truth in Lending Act

Mr. Thigpen claims violation of the Truth in Lending Act, which requires a creditor to make disclosures before the borrower enters into a contract. 15 U.S.C. § 1638(a). The district court concluded that this claim was time-barred and invalid on the merits, and we agree with both conclusions.

### i.    Timeliness

For this claim, a one-year period of limitations exists, 15 U.S.C. § 1640(e), and Mr. Thigpen conceded in district court that the claim had accrued when he bought the truck. He repeats that concession on appeal, stating that the contract triggered the limitations period and explaining that

the later billing statements couldn't have triggered the statute of limitations:

> The [district] court misapplied equitable tolling by holding Plaintiff's [Truth in Lending Act] claims time-barred based on billing statements. Plaintiff never received the required disclosures in the first place, so there was nothing in those statements that could have triggered the statute of limitations. Billing statements do not have [Truth in Lending Act] disclosures within them so this information should have been in the [retail installment contract].

Appellant's Opening Br. at 20.

After signing the contract, Mr. Thigpen waited two years to sue. So the claim would ordinarily be time-barred. But he argues that (1) he was entitled to equitable tolling and (2) the violations were continuing. These arguments lack merit.

For equitable tolling, Mr. Thigpen argues that he couldn't have discovered the violations earlier. For the sake of argument, we can assume that the limitations period is subject to equitable tolling when a debtor couldn't reasonably discover the violation earlier. *See Jones v. TransOhio Sav. Ass'n*, 747 F.2d 1037, 1041 (6th Cir. 1984) (recognizing equitable tolling for claims under the Truth in Lending Act based on the debtor's inability to discover the fraud underlying the asserted violation). But Mr. Thigpen hasn't said why he couldn't have compared the contractual disclosures with the statutory requirements. *See Hubbard v. Fid. Fed. Bank*, 91 F.3d 75, 79 (9th Cir. 1996) (concluding that the limitations

period under the Truth in Lending Act wasn't equitably tolled because the debtor could have compared the creditor's disclosures to the statutory and regulatory requirements). Without such an explanation, the district court didn't err in rejecting Mr. Thigpen's reliance on equitable tolling.

Mr. Thigpen also claims that Westlake continued to violate the statute by

- sending misleading billing statements to him and

- failing to disclose finance charges for the insurance.

But the Act requires disclosures before extending credit. 15 U.S.C. § 1638(a); *see* p. 3, above. A later billing statement might fail to cure an earlier violation. But no new violation could take place absent another extension of credit, *Begala v. PNC Bank*, 163 F.3d 948, 951 (6th Cir. 1998), and Mr. Thigpen doesn't argue that the billing statements provided him with new credit.[2]

Absent a basis for equitable tolling or a continuing violation, the claim is time-barred.

---

[2]    Mr. Thigpen points out that the district court didn't discuss the possibility of a continuing violation from the billing statements. But the district court didn't discuss this issue because Mr. Thigpen hadn't raised it until the appeal.

## ii.    Adequacy of the Disclosures

The district court relied not only on the statute of limitations but also on the undisputed evidence of disclosures. Mr. Thigpen argues that (1) the disclosures were inadequate, (2) the district court decided matters outside Westlake's arguments for summary judgment, and (3) the court disregarded pertinent evidence. We reject these arguments.

### Undisputed Evidence of Conspicuous Disclosures

Under the Act, a creditor must clearly and conspicuously disclose the annual percentage rate, amount financed, and specific finance charge. 15 U.S.C. §§ 1632(a), 1638(a). And the contract provides these disclosures. For example, the first page of the contract contains boxes with titles in bold, labeled *Truth-in-Lending Disclosure*. Inside this box were the annual percentage rate, amount financed, and the finance charge.

**Truth-In-Lending Disclosure**

| Annual Percentage Rate<br>The cost of your credit as a yearly rate. | Finance Charge<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid when you have made all scheduled payments. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 1000.00 |
|---|---|---|---|---|
| 10.99 % | $ 4092.28 | $ 16973.00 | $ 21065.28 | $ 22065.28 |

Payment Schedule. Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| | $ | |
| 48 | $ 438.86 | Monthly, Beginning 04/04/22 |
| | $ | |

Security. You are giving us a security interest in the Property purchased.

Late Charge. If all or any portion of a payment is not paid within 10 days of its due date, you will be charged a late charge of the lesser of 5% of the unpaid amount of the payment due or $15.00.

Prepayment. If you pay off this Contract early, you will not have to pay a penalty.

Contract Provisions. You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

**Notice**

The following notice applies if this is a contract for the sale of a used motor vehicle. New Mexico law requires that this vehicle will be fit for the ordinary purposes for which the vehicle is used for fifteen days or five hundred miles after delivery, whichever is earlier, except with regard to particular defects disclosed on the first page of this agreement. You (the consumer) will have to pay up to twenty-five dollars ($25.00) for each of the first two repairs if the warranty is violated.

Mr. Thigpen doesn't explain why these disclosures would have lacked the required clarity or conspicuousness.

He does argue that Westlake failed to disclose the finance charges for insurance. But Mr. Thigpen doesn't present any evidence that Westlake offered insurance. Westlake just told Mr. Thigpen that he needed to obtain insurance from an acceptable insurer.

Mr. Thigpen also argues that Westlake failed to tell him that he could obtain an itemization of the finance charges. But the district court explained that Westlake had provided the itemization in the contract itself, and Mr. Thigpen doesn't identify any deficiencies in the itemization.

7

**Scope of the Summary-Judgment Motion**

Mr. Thigpen also argues that the district court decided issues that Westlake hadn't even raised, but he is mistaken.

Westlake urged summary judgment based on arguments that

- the contractual disclosures were complete and conspicuous,

- there was no need to disclose a right to get an itemized list of finance charges because the contract itself had provided the itemization,

- the contract disclosed a right to get insurance from other companies and Westlake itself didn't offer insurance,

- there's no evidence of advertising for the truck that Mr. Thigpen bought, and

- there's no evidence about past requirements for downpayments.

The district court tracked these arguments in granting summary judgment, explaining that Westlake had

- "clearly delineated" the required information on the first page of the contract,

- provided an itemized list of charges rather than explain the right to request such a list,

- explained that Westlake had disclosed the right to choose an insurer, and

- concluded that Mr. Thigpen hadn't presented evidence of advertisements for the truck or the customary practices involving downpayments.

R. at 345–47.

Mr. Thigpen argues that Westlake didn't deny advertising of the truck. But he's mistaken: Westlake did argue for summary judgment based on the lack of advertising: "Plaintiff also appears to allege Westlake violated 15 U.S.C. § 1662 . . . [b]ut this provision relates only to advertising practices, and Plaintiff has no evidence that Westlake advertised the vehicle the third-party dealer sold him, or related to this transaction in any way." R. at 169.

We thus reject Mr. Thigpen's argument that the district court decided issues outside Westlake's summary-judgment motion.

**Purported disregard of evidence**

Mr. Thigpen also insists that the district court ignored his evidence of advertising, failure to credit his downpayment, and a continuing violation from the billing statements.

First, Mr. Thigpen doesn't say where he presented evidence of advertising, and we see no such evidence in his response to the summary-judgment motion. In addition, Mr. Thigpen says that he pleaded a failure to credit his downpayment. But at the summary-judgment stage, Mr. Thigpen couldn't rest on the complaint: He needed to present evidence, *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996), and he didn't do so.

Second, Mr. Thigpen argues that the district court failed to discuss his claim involving misapplication of the downpayment. But Mr. Thigpen didn't

9

- allege in the complaint that Westlake had misapplied the downpayment or

- discuss such an allegation when responding to the motion for summary judgment.

So the district had no reason to discuss an allegation involving misapplication of the downpayment.

Third, Mr. Thigpen argues that the district court erred by failing to discuss billing statements. Appellant's Opening Brief at 25. We disagree. R. at 352. Granted, the court didn't discuss whether the billing statements had created a continuing violation. But there was no need. The court reasoned that a claimant couldn't circumvent the statute of limitations when alleging a failure to make disclosures when entering the contract. R. at 343; *see Stevens v. Rock Springs Nat'l Bank*, 497 F.2d 307, 309 (10th Cir. 1974). Faced with that argument, Mr. Thigpen said nothing about a continuing violation from the billing statements.

We thus conclude that the district court didn't disregard his arguments when granting summary judgment to Westlake.

## c.    Claim under 42 U.S.C. § 1983

Mr. Thigpen also faults the district court for sua sponte criticizing his reliance on 42 U.S.C. § 1983 even though Westlake had not made a similar criticism. Appellant's Opening Br. at 17. The district court said: "Plaintiff subsequently filed a complaint styled as a civil rights claim under 42 U.S.C. § 1983, though it is unclear why, as Defendant Westlake is

10

not a state actor. However, Plaintiff does not invoke 42 U.S.C. § 1983."
R. at 337 (citation omitted).

Mr. Thigpen doesn't explain why this statement would support appellate relief. The caption of his complaint states: "Civil Rights Complaint Pursuant to 42 U.S.C. § 1983." R. at 6 (capitalization altered). But he didn't assert a claim under § 1983 and doesn't say on appeal that he intended to assert a claim under that section. In these circumstances, Mr. Thigpen needed to explain why the district court's remark about the caption would support appellate relief. He didn't provide such an explanation, and the district court's remark doesn't support reversal.

**3.    Claim under the Federal Debt Collection Practices Act**

Mr. Thigpen also claims that Westlake violated the Federal Debt Collection Practices Act. Under this statute, liability is limited to "debt collectors." *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013). The district court concluded that Westlake wasn't a *debt collector* for two reasons.

First, a company is a *debt collector* only when trying to collect a debt owed to someone else. 15 U.S.C. § 1692a(6). And Westlake was trying to collect its own debt, not a debt owed to someone else.

Second, the statute excludes liability for companies obtaining an assignment of a debt that isn't in default at the time of the assignment. *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1187 (10th Cir.

2013). And Westlake obtained an assignment of the installment contract immediately after Mr. Thigpen bought the truck. At that time, he wasn't in default.[3]

Mr. Thigpen challenges the ruling, but he doesn't contest the district court's reasoning. Instead, he argues that he was called by two other companies: NowPay and High Desert Repossession. If NowPay and High Desert Repossession were debt collectors, they might incur liability under the statute. But Mr. Thigpen doesn't explain how their statutory violations could trigger liability for Westlake.

He instead asserts that Westlake could qualify as a *debt collector* "when collecting via third parties." Appellant's Opening Br. at 34. But the statute targets only debt collectors, and Westlake isn't a debt collector. Mr. Thigpen asserts that Westlake could incur liability even it wasn't a debt collector, relying solely on *Reyes v. Steeg Law, LLC*, 760 F. App'x 285, 288 (5th Cir. 2019) (unpub., per curiam). But this opinion doesn't suggest that a creditor can incur liability when collecting a debt through third parties. To the contrary, this opinion merely says that an attorney

---

[3]    In his reply brief, Mr. Thigpen says that the logs and repossession create a triable dispute over whether the loan was in default for purposes of the Fair Debt Collection Practices Act. Appellant's Reply Br. at 19. But he doesn't explain how the loan could have been in default when assigned to Westlake. After all, Westlake acquired the assignment right after Mr. Thigpen had bought the truck.

wouldn't qualify as a *debt collector* when debt collection constituted a minor part of the attorney's legal business. *Reyes*, 760 F. App'x at 288.

Westlake wasn't a debt collector, which prevents statutory liability. The Fifth Circuit's unpublished per curiam opinion in *Reyes* has no bearing on this issue.[4]

### d.    Claim under the Telephone Consumer Protection Act

Mr. Thigpen also claimed that Westlake had violated the Telephone Consumer Protection Act by calling him through automatic dialing or prerecorded voices. But this statute contains an exception for calls to someone who has provided "express consent." 47 U.S.C. § 227(b)(1)(A).

The district court relied on this exception in granting summary judgment to Westlake. Mr. Thigpen's contract said: "[Y]ou agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account." R. at 53. Through this language, Mr. Thigpen expressly consented to Westlake's use of prerecorded messages and

---

[4]    Mr. Thigpen also argues that the district court improperly considered new arguments in Westlake's reply brief, but the court allowed Mr. Thigpen to file a surreply brief in order to rebut those arguments. *See* Part 1, above. In any event, Mr. Westlake doesn't identify any new arguments on the claim under the Federal Debt Collection Practices Act.

13

automatic dialing. So the district court was right to grant summary judgment to Westlake on this claim.

Mr. Thigpen says that the contract language is ambiguous, but doesn't say anyone could read this language differently. The Eleventh Circuit addressed similar language: "I authorize Sallie Mae to communicate with me using automated telephone dialing equipment and/or artificial or pre-recorded voice messages." *Lucoff v. Navient Solutions, LLC*, 981 F.3d 1299, 1302 (11th Cir. 2020). Considering that language, the Eleventh Circuit concluded that the borrower had "unambiguous[ly]" consented to calls using automated dialing and prerecorded messages. *Id.* at 1306. The same is true here: Mr. Thigpen unambiguously consented in the contract to Westlake's use of automated dialing and prerecorded calls.

In district court, Mr. Thigpen argued that the consent "must be specific to the method of communication and not derived from vague or ambiguous sources." R. at 213; *see also* Appellant's Opening Br. at 40 (arguing that consent under the statute must be "specific"). For this argument, he purports to quote a Fifth Circuit opinion stating that "prior express consent 'must be specific to the method of communication and not derived from vague or ambiguous sources.'" R. at 213 (purporting to quote *Reyes v. Lincoln Auto. Fin. Servs.*, 861 F.3d 51, 56 (2d Cir. 2017)); Appellant's Opening Br. at 40 (similar paraphrase of *Reyes* as stating that consent must be explicit and limited in scope). But the cited opinion

14

doesn't contain this language or discuss the required level of specificity. The issues there were (1) whether the district court could resolve credibility of a party on summary judgment and (2) whether a party could revoke consent. *Reyes v. Lincoln Auto. Fin. Servs.*, 861 F.3d 51, 56 (2d Cir. 2017). In any event, Mr. Thigpen's contract did specify the "method[s] of communication," R. at 213, stating that Westlake could call "through prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account." R. at 53.

Mr. Thigpen argues that third parties, like NowPay, made calls. Some courts recognize vicarious liability of the creditor when its agent violates the Telephone Consumer Protection Act. *E.g.*, *Hossfeld v. Allstate Ins. Co.*, 179 F.4th 1046, 1054 (7th Cir. 2026); *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014). But Mr. Thigpen doesn't develop an argument supporting an agency theory.

In his reply brief, Mr. Thigpen also argues that (1) he gave only his cell number and received calls at other phone numbers and (2) he revoked the alleged consent. Appellant's Reply Br. at 2-3, 10, 21-23. But he waived these arguments by omitting them in his opening brief. *See Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 667 n.9 (10th Cir. 2016) ("We generally do not consider arguments raised for the first time in a reply brief").

15

Mr. Thigpen also makes other arguments that stem from misinterpretation of the district court's ruling. The court rejected this claim based solely on Mr. Thigpen's written consent. R. at 353–54. But Mr. Thigpen argues that the district court ignored evidence of Westlake's "prerecorded/artificial voice calls," dismissed call logs as inconclusive and "repo texts" as "'unreadable,'" improperly credited arguments in a reply brief that characterized messages as emails rather than calls, dismissed claims about calls and emails omitted from Westlake's summary-judgment motion, and held that a jury couldn't reasonably find that calls had been made using an "'ATDS.'" Appellant's Opening Br. at 37–42. None of these matters appear in the district court's discussion of the claim under the Telephone Consumer Protection Act. So we reject Mr. Thigpen's arguments that the district court ignored evidence, credited arguments newly presented in the reply brief, dismissed claims about calls and emails omitted from Westlake's summary-judgment motion, and erred in addressing the use of "ATDS."

e.    **Claim for Breach of Contract**

Mr. Thigpen also claimed breach of contract under state law. On this claim, the district court granted summary judgment to Westlake, reasoning that the contract had clearly allowed late fees, required collision insurance, allowed automated calls, and authorized repossession upon a failure to

renew the insurance. R. at 355–57. Mr. Thigpen disputes these conclusions, but doesn't say why he thinks the court erred.

First, he says that the contract doesn't authorize repossession for failing to obtain insurance. As the district court explained, however, the contract said that

- Mr. Thigpen "must insure the [truck],"[5]

- he would "be in default" upon a failure to undertake any of the contractual obligations, and

- Westlake can "take possession of [the truck]" upon a contractual default.

R. at 52; *see* R. at 357 (district court's discussion of these contract terms). Mr. Thigpen doesn't say why he thinks these provisions would leave

---

[5]    In his reply brief, Mr. Thigpen argues that the district court granted summary judgment on a ground that Westlake hadn't argued— the existence of a contractual obligation to insure the truck. Appellant's Reply Br. at 26. But he doesn't identify evidence that he could have presented with greater notice of this argument. Without such evidence, sua sponte consideration shouldn't require reversal. *See Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1214 (10th Cir. 2010) (affirming the district court's sua sponte grant of summary judgment when the plaintiff had not identified other evidence or arguments that she would have presented with notice); *Oldham v. O.K. Farms, Inc.*, 871 F.3d 1147, 1150 (10th Cir. 2017) (stating that to establish prejudice from a lack of notice, the party challenging the district court's summary-judgment ruling "must, at the least, identify for the appellate court what additional arguments he could have made or evidence he could have produced or relied on to undermine the district court's ruling").

Westlake unable to repossess the truck if he hadn't obtained insurance as required in the contract.

Second, he says that the billing statements included fees "not itemized in the [Truth in Lending Act] disclosure box." Appellant's Opening Br. at 43. We have explained above that Westlake had complied with the Act.

Third, Mr. Thigpen includes one sentence stating that Westlake called him more often than what had been allowed in the contract ("time to time"), adding that this issue didn't appear in the motion for summary judgment. Appellant's Opening Br. at 43. But Westlake didn't include this issue because it wasn't pleaded: Mr. Thigpen alleged breach of contract, but said nothing in those allegations about calls exceeding his consent for communications "from time to time."

We thus reject Mr. Thigpen's challenges to the ruling on his contract claim.

### f.    Claim for Unjust Enrichment

Mr. Thigpen also claims unjust enrichment. The district court rejected this claim, holding that unjust enrichment was unavailable because the parties had a contract spelling out the parties' obligations. Mr. Thigpen doesn't challenge this holding. He instead argues that (1) the district court didn't address violations outside the contract and (2) Westlake hadn't

argued until its reply brief that the contract covered all of the disputed matters. We reject both arguments.

First, Mr. Thigpen argues that he presented evidence of efforts to collect insurance premiums through an unauthorized demand letter, insisted on fees not itemized in the contract, and unilaterally extended interest on the loans. The district court explained that each of these matters is spelled out in the contract, and Mr. Thigpen doesn't say why he thinks the court was wrong. He instead says, without explanation, that these alleged violations would have existed independently of the contract. Without such an explanation, however, we have no reason to disturb the district court's reasoning. *See Nixon v. City & Cnty. of Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015) ("The first task of an appellant is to explain to us why the district court's decision was wrong.").

Second, Mr. Thigpen argues that Westlake didn't raise this issue until its reply brief. We disagree. In the motion for summary judgment, Westlake argued that "[a] valid and enforceable retail installment contract governing the parties' relationship precludes Plaintiff's unjust enrichment claim." R. at 172. In response, Mr. Thigpen argued that Westlake had imposed insurance obligations not clearly disclosed in the contract, collected fees exceeding what was stated in the contract, and unilaterally extended the loan term without proper notice. *Id.* at 220. Westlake responded in its reply brief. In this situation, the court allowed Mr.

19

Thigpen to file a surreply so that he would have "a chance to respond to the new information." *Navajo Health Found.-Sage Mem. Hosp., Inc. v. Burwell*, 110 F. Supp. 3d 1140, 1183 (D.N.M. 2015). This approach fell within the district court's discretion. *See Conroy v. Vilsack*, 707 F.3d 1163, 1179 n.6 (10th Cir. 2013) ("Our case law makes clear that a district court abuses its discretion only when it both denies a party leave to file a surreply *and* relies on new materials or new arguments in the opposing party's reply brief." (emphasis in original)).

We thus reject Mr. Thigpen's challenge to the ruling on his claim of unjust enrichment.

**g.    Claim under the New Mexico Unfair Practices Act**

Mr. Thigpen also asserts a claim under the New Mexico Unfair Practices Act, which prohibits "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce." N.M. Stat. Ann. § 57-12-3. The district court rejected this claim, reasoning in part that the contract

- expressly required Mr. Thigpen to insure the truck and

- the contract allowed repossession if he were in default.

R. at 360–62. Mr. Thigpen disagrees with this reasoning, but doesn't say what's wrong with it. Absent such an explanation, we have no reason to disturb the district court's reasoning. *See Nixon v. City & City & Cnty. of*

*Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015) ("The first task of an appellant is to explain to us why the district court's decision was wrong.").

The court also reasoned that Mr. Thigpen lacked any evidence that Westlake

- had misled him by extending the loan while saying that additional payments would improve his financial situation and

- had failed to provide clear disclosures of the total loan cost.

R. at 362. Mr. Thigpen challenges this reasoning based on administrative charges that Westlake had failed to accurately disclose the annual percentage rate and improperly altered loan terms.[6] But the charges involving Westlake's prior misconduct toward other borrowers doesn't support an allegation that Westlake had later misled Mr. Thigpen himself.

\*\*\*

We affirm the grant of summary judgment. The district court didn't err in considering Westlake's reply brief because Mr. Thigpen had a chance to respond in a surreply brief. And even though Westlake isn't a *debt collector*, Westlake provided all of the required disclosures in a box brandished at the start of the contract, called Mr. Thigpen only after

---

[6]    The purported evidence consists of a press release stating that the Consumer Financial Protection Bureau had begun an enforcement action against Westlake more than six years before Mr. Thigpen bought the truck. R. at 271–79.

obtaining his express consent, and simply enforced rights unambiguously provided in the contract.

Entered for the Court


Robert E. Bacharach
Circuit Judge